# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

ROBERT MAXWELL
AND PRINCESS M. SMITH                                                    PLAINTIFFS

V.                          CASE NO. 4:07CV00669 SWW/BD

RONALD TALLEY, *et al.*                                                  DEFENDANTS

## RECOMMENDED DISPOSITION

**I**.     **Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District

Judge Susan Webber Wright.  Any party may file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.  An original and one copy of your

objections must be received in the office of the United States District Court Clerk no later

than fourteen (14) days from the date of this recommendation.  A copy will be furnished

to the opposing party.   Failure to file timely objections may result in waiver of the right

to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

II.   **Background**:

Plaintiffs Robert Maxwell and Princess M. Smith, detainees at the Pulaski County

Regional Detention Facility ("PCRDF") at the time this 42 U.S.C. § 1983 lawsuit was

filed, allege, among other things, that officers and inmates are running a prostitution ring

within the PCRDF.[1]   (Docket entry #2)  Plaintiffs originally named as Defendants many

employees of the PCRDF, including Pulaski County sergeants, lieutenants, majors,

deputies, and staff members.

Plaintiff Maxwell filed an Amended Complaint.  (#18)  In his Amended

Complaint, he primarily added or identified new Defendants.  He did not make additional

allegations against the existing Defendants.  The majority of the Amended Complaint

addressed Plaintiff Maxwell's claims against Deputy Prosecutor Melanie Martin and his

public defender, Andy Shaw, both of whom have been dismissed from this lawsuit.

(#143)

The Court held an evidentiary hearing in this matter on March 16, 2010.  (#340)

At the hearing, each Plaintiff was given the opportunity to explain each of his or her

claims and to present evidence to support those claims.  Following the hearing, the

Defendants filed a motion for summary judgment.  (#350)  Plaintiff Maxwell has

---

[1]  The Court notes that although Plaintiffs' original Complaint contained many references to prostitution ring participants Plaintiffs identified as the "supersueders," this group was not referenced in either Plaintiffs' specific claims at the evidentiary hearing held in this matter.

responded to the Defendants' motion.  (#360 and #361)  Plaintiff Smith has not responded

to the Defendants' motion.[2]  Plaintiff Maxwell now has filed a motion for ruling

requesting that the Court rule on the Defendants' motion for summary judgment.  (#376)

Based upon the evidence presented, the Court recommends that the Defendants'

motion (#350) be GRANTED.  All claims should be dismissed with prejudice.  In

addition, Plaintiff Maxwell's motion for ruling (#376) should be DENIED as moot.

## III.   Discussion:

### A.    Standard

Summary judgment is appropriate when the evidence, viewed in the light most

favorable to the nonmoving party, presents no genuine issue of material fact.  FED. R.

CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty

Lobby, Inc.,* 477 U.S. 242, 246 (1986).  Once the moving party has successfully carried its

burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the

pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing

that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *Mosley v. City of

Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not 'rest

on mere allegations or denials, but must demonstrate on the record the existence of

---

[2]  The Court notes that Plaintiff Maxwell filed a response to the Defendants'
motion on behalf of Defendant Smith.  (#358 and #359)  Defendants then filed a motion
to strike the response (#363), which the Court granted.  (#366)  Plaintiff Maxwell
subsequently filed a motion for the District Court to reconsider this Court's denial of his
motion to strike.  (#373)  The District Court denied his motion.  (#374)

specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).  If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted.  See *Celotex,* 477 U.S. at 322.

B.      Plaintiff Smith's Claims

1.      Sexual Assault - Defendant Edmondson

At the evidentiary hearing, Plaintiff Smith testified that in February 2007, while she was working in the kitchen at the PCRDF, Defendant Edmonson followed her into a closet where he grabbed his genitals and told Plaintiff to "get down on her knees and suck."  Plaintiff Smith testified that Defendant Edmonson grabbed her breast during this incident.  She did not perform oral sex on Deputy Edmonson, but rather left the closet, according to her testimony at the hearing.  Following this incident, Plaintiff Smith filed a grievance regarding Deputy Edmonson's conduct.[3]

In their motion for summary judgment, Defendants argue that, although the due process clause protects pretrial detainees from force amounting to punishment, including sexual assault, Defendant Edmonson's conduct, while "deplorable," did not amount to a

---

[3] There appears to be a discrepancy regarding the date of this alleged incident on Plaintiff Smith's grievance.  This does not concern a material fact.

constitutional violation.  Defendants rely upon *Berryhill v. Schriro*, 137 F.3d 1073, 1076

(8th Cir. 1998), to support their argument.

In *Berryhill*, the Eighth Circuit affirmed the district court's finding that a prison

guard's brief touching of the buttocks of a male inmate, without more, did not amount to

a constitutional violation.  Although the facts in this case differ from those in *Berryhill*,

unfortunately for Plaintiff Smith, based upon the present status of the law, to establish an

eighth amendment violation, the sexual assault must be more severe than the incident in

this case.[4]

The Eighth Circuit has specifically stated that sexual harassment of a prisoner by a

prison official can violate the Eighth Amendment.  *Frietas v. Ault*, 109 F.3d 1335, 1338

(8th Cir. 1997).  "[B]ecause the sexual harassment or abuse of an inmate by a corrections

---

[4] Because Plaintiff Smith was a pretrial detainee at the time of the alleged assault, her claims are analyzed under the due process clause of the Fourteenth Amendment. Under that analysis, a pretrial detainee's constitutional rights are violated if the conditions of confinement amount to punishment.  See *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  (Citation omitted)). "[P]retrial detainees are entitled to 'at least as great' protection [under the Fourteenth Amendment] as that afforded convicted prisoners under the Eighth Amendment."  *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (internal quotation omitted). Although the Eighth Circuit has "previously suggested that the burden of showing a constitutional violation is lighter for a pretrial detainee under the Fourteenth Amendment than for a post-conviction prisoner under the Eighth Amendment," *Wever v. Lincoln County, Neb.*, 388 F.3d 601, 606 n. 6 (8th Cir. 2004) (citing *Smith v. Copeland*, 87 F.3d 265, 268 n. 4 (8th Cir. 1996)), it has "repeatedly applied the same deliberate indifference standard as is applied to Eighth Amendment claims made by convicted inmates." *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006) (internal citation omitted).

officer can never serve a legitimate penological purpose and may well result in physical

and psychological harm, such abuse can, in certain circumstances, constitute the

unnecessary and wonton infliction of pain." *Id.* (internal quotation omitted)  Only severe

or repetitive sexual abuse, however, rises to the level of an eighth amendment violation.

See *Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000) (holding inmate plaintiff

sufficiently stated eighth amendment claim where prison official repeatedly requested

oral sex, groped inmate plaintiff's buttocks, exposed his genitals to inmate plaintiff, and

forcibly pressed his exposed penis into the inmate plaintiff's buttocks) and *Berry v.

Oswalt*, 143 F.3d 1127 (8th Cir. 1998) (finding sufficient evidence to support an eighth

amendment violation when prison officer attempted to perform non-routine patdown

searches on inmate plaintiff, propositioned the inmate plaintiff for sex, intruded upon her

when she was not fully dressed, and repeatedly made sexual comments to her).

In contrast, federal courts have held that isolated incidents of inappropriate

conduct by prison officials do not constitute a constitutional violation.  See *Boxer X v.

Harris*, 437 F.3d 1107 (11th Cir. 2006) (a female prison guard's alleged solicitation of a

male prisoner's manual masturbation, even under the threat of reprisal, did not support an

eighth amendment violation); *Washington v. Harris*, 186 Fed. Appx. 865, *1 (11th Cir.

2006) (unpublished op.) (inmate failed to state eighth amendment claim where prison

guard "crept up behind [the prisoner inmate] while he was working," grabbed his genitals,

kissed him on the mouth, and threatened to perform oral sex on him); *Jackson v. Madery*,

158 Fed. Appx. 656 (6th Cir. 2005) (unpublished op.) (allegation of rubbing and grabbing a prisoner's buttocks in a degrading manner was insufficient to establish an eighth amendment violation); *Boddie v. Schnieder*, 105 F.3d 857, 961 (2nd Cir. 1997) (verbal harassment and fondling of inmate's genitals by prison guard did not establish an eighth amendment violation); *Williams v. Anderson*, 2004 WL 2282927 (D. Kan. Sep. 7, 2004) (no eighth amendment violation where prison guard grabbed pre-trial detainee's buttocks, exposed his genitals to the inmate plaintiff, and made crude sexual remarks); and *Jones v. Culinary Manager II*, 30 F.Supp. 2d 491, 493, 497-98 (E.D. Pa. 1998) (plaintiff inmate's allegation that prison guard pinned plaintiff down, ground his pelvis against plaintiff's buttocks, and threatened sex was not sufficient to establish an eighth amendment violation).

In this case, according to Plaintiff Smith's testimony, Defendant Edmonson inappropriately touched her breast, grabbed his genitals, and sexually propositioned her on one occasion. While such conduct may amount to a tort under state law, the Court cannot conclude that this despicable and unprofessional conduct amounts to a constitutional violation under the current state of the law. Plaintiff Smith failed to allege or demonstrate that Defendant Edmonson engaged in any repetitive inappropriate conduct, and she was not forced to engage in any sexual activity with Defendant Edmonson, even in the one incident. Consequently, Plaintiff Smith has failed to create a

genuine issue of material fact regarding this claim.  Accordingly, Plaintiff Smith's claim fails as a matter of law.

2.      Sexual Assault - Defendant Owens

At the evidentiary hearing, Plaintiff Smith also testified that Defendant Owens fondled her in the holding cell at the Pulaski County Courthouse "one day in 2006 or 2007."  Plaintiff Smith testified that Defendant Owens told her not to say anything about the incident or he would charge her with escape.  Plaintiff Smith testified that she did not file a grievance about this matter because she was afraid.

The Prison Litigation Reform Act ("PLRA") requires that prisoners exhaust all "available" remedies before filing suit under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained").  The United States Court of Appeals for the Eighth Circuit has defined "available" as "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible."  *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001).  It does not matter whether the prisoner subjectively believed that there was no point in pursuing administrative remedies.  *Lyon v. Vande Krol*, 305 F.3d 806, 808-09 (8th Cir. 2002); *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000), *cert. denied* 531 U.S. 1156 (2001).

If exhaustion is not complete by the time of the filing of the prisoner's complaint, dismissal is mandatory.  *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).  Prisoners

have been excused from completing administrative procedures only when correctional officials have prevented prisoners from utilizing the procedures or when the officials themselves have failed to comply with the administrative procedures. *Miller v. Norris*, 247 F.3d at 740; *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001).

Here, Plaintiff Smith testified that she did not exhaust her administrative remedies regarding this claim because she was afraid. Unfortunately for Plaintiff Smith, the fear of future retaliation for filing grievances does not excuse an inmate from pursuing administrative remedies. *Taylor v. Banks*, 2007 WL 1791233 at *1 (E.D. Ark. June 13, 2007) (dismissing complaint of plaintiff who argued that he could not exhaust his administrative remedies due to fear of retaliation). Because Plaintiff Smith has failed to come forward with any evidence that she was prevented from pursuing administrative remedies with regard to her claim against Defendant Owens, she has failed to create a genuine issue of material fact, and this claim must be dismissed.

Further, even if Plaintiff Smith had exhausted her administrative remedies under the PLRA, it would be difficult for the Court to conclude that Plaintiff had established that Defendant Owens violated her constitutional rights. Here, Plaintiff Smith testified that on one occasion, Defendant Owens ground his pelvis against her and fondled her. Again, without alleging that Defendant Owens engaged in any sort of repetitive

inappropriate behavior or more severe sexual advances, her claim falls short of stating an eighth amendment violation under the current state of the law.[5]

C.     Plaintiff Maxwell's Claims

1.     Loss of Unborn Child

Plaintiff Maxwell alleges, and testified at the hearing, that upon entering the PCRDF, Plaintiff Smith was pregnant with his child.  Plaintiff Maxwell testified that, based upon the physical abuse, inadequate medical treatment, and unconstitutional manner in which the PCRDF was run, Plaintiff Smith suffered a miscarriage.  Even assuming that Plaintiff Maxwell has standing to raise such a claim, his claim fails as a matter of law.

Here, the undisputed evidence shows that on May 10, 2006, the day after Plaintiff Smith entered the PCRDF, she took a pregnancy test, and the results of that test were negative.  (#360 at p.33)  Accordingly, although her medical records indicate that she may have been pregnant before entering the PCRDF (#360 at p.31-32), the day after she entered the PCRDF, she apparently was not pregnant.  (#360 at p.34)  Plaintiff Maxwell

---

[5]  At the evidentiary hearing, Plaintiff Maxwell testified that, although he could not see what transpired between Plaintiff Smith and Defendant Owens, he believed that Defendant Owens pulled down Plaintiff's Smith's pants, threw her against the table, and pulled down his own pants.  Plaintiff Maxwell could not state whether Defendant Owens actually penetrated Plaintiff Smith.  Although Defendant Owens apparently was fired from the PCRDF for raping another detainee at the Pulaski County Courthouse, Plaintiff Smith did not testify that the incident occurred as described by Plaintiff Maxwell. Because Plaintiff Maxwell did not observe the incident, the Court will not consider his testimony or Defendant Owen's apparent discharge in analyzing this claim.

has failed to come forward with any medical evidence showing that Plaintiff Smith

experienced a miscarriage at all, much less that a miscarriage was the result of conditions

at the PCRDF.  Without any evidence to support this claim, it fails as a matter of law.[6]

    2.    Due Process Claim - Commissary Privileges

At the evidentiary hearing, Plaintiff Maxwell testified that Defendants Peters,

Marshall, and Ferguson denied him commissary privileges for sixty days without any

notice or hearing.  He claims that Defendant Ferguson further instructed Defendant

Marshall to refuse him commissary items even after the suspension was lifted.  This claim

also fails as a matter of law.

Because Plaintiff failed to properly serve Defendant Ferguson, this Defendant has

been dismissed as a party to this lawsuit.  (#243)  Further, although Defendant Marshall

was served on March 12, 2008 (#239), Defendant Marshall has failed to answer or

otherwise appear in this lawsuit.  Although Defendant Marshall is not a party to the

---

[6] In his response to the motion for summary judgment, Plaintiff Maxwell states that he and Plaintiff Smith informed Kelsey Williams, Plaintiff Smith's "god sister," that Plaintiff Smith was pregnant. (#360 at p.4)  At the evidentiary hearing, Ms. Williams testified that she had heard that Plaintiff Smith was pregnant and that she suffered a miscarriage.  However, such hearsay is insufficient to create a genuine issue of material fact on this issue.  See *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 460 (8th Cir. 2009) (citing *Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1073 (8th Cir. 1996)).

summary judgment motion now pending before this Court, the Court finds that this claim fails.[7]

Plaintiff Maxwell testified that his commissary privileges were suspended on December 28, 2006.  Accordingly to the undisputed evidence, Plaintiff was serving a twenty-day disciplinary sentence at that time.  (#352-1 at p.21)  Because Plaintiff was not entitled to the commissary privileges at the time that he alleges that they were denied, his due process claim fails.[8]

Inmates have no liberty interests in commissary privileges.  *Cato v. Watson*, 212 Fed. Appx. 258, 259-60 (5th Cir. 2006).  Further, although Plaintiff alleges that Defendants violated PCRDF policy when they failed to restore his commissary privileges for forty-eight hours while he was serving his disciplinary sentence, this allegation – even if true –  fails to state a constitutional claim.  The failure to follow state law or procedure falls short of a constitutional violation.  *Kennedy v. Blankenship*, 100 F.3d 640 (8th Cir. 1996).  Accordingly, Plaintiff's claim fails as a matter of law.[9]

---

[7]  Under 28 U.S.C. § 1915(e)(2)(B)(ii), a Court, at any time, may dismiss a case if it fails to state a claim on which relief may be granted.  Here, as discussed below, Plaintiff has failed to state a claim regarding the denial of his commissary privileges.  Accordingly, Plaintiff has failed to state a claim against Defendant Marshall, and he should be dismissed as a party Defendant.

[8]  Plaintiff has failed to present any evidence that he was not provided notice of the disciplinary for which he received the twenty-day sentence.

[9]  In his response to the Defendants' motion for summary judgment, Plaintiff states that because he was a pre-trial detainee at the time his commissary privileges were denied, the denial of such privileges constituted impermissible punishment.  (#360 at

3.      Due Process Claim - Disciplinary Proceedings

Plaintiff Maxwell alleges that his due process rights were violated when he was

not provided an incident report until the time of the hearing for a disciplinary issued on

May 21, 2006.  Although he received notice of the charges, he claims that he did not

receive a copy of the actual incident report within twenty-four hours, as required by

PCRDF policy.

Because Plaintiff Maxwell was a pre-trial detainee at the time this disciplinary was

issued, he was entitled to notice and the opportunity to be heard.  See *Higgs v. Carver*,

286 F.3d 437, 438 (7th Cir. 2002) (stating that "[a] pretrial detainee cannot be placed in

segregation as a punishment for a disciplinary infraction without notice and an

opportunity to be heard; due process requires no less").  The Supreme Court has held that

procedural due process for inmates involved in disciplinary proceeding requires that the

inmate: (1) be given written notice of the charges; (2) be afforded the opportunity for a

hearing before an impartial tribunal; (3) have a limited right to call witnesses and present

documentary evidence in his defense; and (4) be given written statements of the hearing

officer's decision.  *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2693 (1974).

---

p.22)  Unfortunately for Plaintiff, "not every disability imposed during pretrial detention
amounts to 'punishment' in the constitutional sense."  *Smith v. Copeland*, 87 F.3d 265,
268 (8th Cir. 1996).  Again, at the time Plaintiff's commissary privileges were denied, he
was serving a sentence for a disciplinary infraction.  Plaintiff has failed to offer any
evidence that he was denied notice or a hearing for that disciplinary.  Accordingly,
Plaintiff has failed to create any genuine issue of material fact on this issue.

Here, Plaintiff Maxwell's complaint that he was not provided an incident report within twenty-four hours is not well-taken.  Plaintiff testified, however, that he was provided written notice of the disciplinary charges as required by the constitution. Further, Plaintiff attaches to his response the "notice of charge(s)" dated May 22, 2006.[10] (#360 at p.78)  Although Defendants may have violated the PCRDF regulations in failing to provide Plaintiff an incident report, inmates are not guaranteed any such right under the constitution.  Further, a prison or state official's mere failure to follow state law or policy does not rise to the level of a constitutional violation.  *Kennedy v. Blankenship*, *supra*. Accordingly, this claim fails.[11]

---

[10]  Because the copy of the "notice of charge(s)" is hardly legible, the Court cannot determine whether Plaintiff Maxwell signed the notice or whether he refused.

[11]  In his response to the motion for summary judgment, Plaintiff Maxwell alleges that he requested that two witnesses be present for the disciplinary hearing.  He alleges that the "administrative record is insufficient as to witness C. Williams." (#360 at p.23) Plaintiff, however, attaches a memorandum from Defendant Bailey explaining the efforts made to obtain witness statements for Plaintiff's hearing. (#360 at p.79)  In the memorandum, Defendant Bailey writes because "one of [Plaintiff's] witnesses" was in court, Plaintiff's hearing was delayed for several hours.  (#360 at p.79) (emphasis added) Accordingly, although the Court is unaware of whether inmate Williams wanted to testify at the hearing, it appears that Defendant Bailey made contact with him in connection with the disciplinary at issue.  Plaintiff has failed+ to present any evidence that inmate Williams was not permitted to testify at the hearing in question.

Further, the memorandum raises the question of how Plaintiff Maxwell knew that his hearing was delayed if he did not receive notice of the charges.  Such evidence indicates that he actually was provided notice.  Accordingly, Plaintiff has failed to present any evidence creating a material dispute of material fact on this issue.

4.      Due Process Claim - May 27, 2006 Disciplinary

With regard to the disciplinary that Plaintiff Maxwell received on May 27, 2006,

he testified that Defendant Blalock, who wrote the disciplinary, did not actually see the

incident.[12]   In addition, he testified that he did not receive notice of the charges within

twenty-four hours and that his disciplinary hearing was not held within seventy-two hours

as required by PCRDF policy.  This claim also fails.

As noted, because Plaintiff Maxwell was a pre-trial detainee at the time this

disciplinary was issued, he was entitled to notice and the opportunity to be heard.  See

*Higgs v. Carver*, *supra*.  In support of their motion for summary judgment, however,

Defendants provide the "notice of charge(s)" for the May 27, 2006 incident.  (#352-1 at

p.5)  The notice indicates that Plaintiff refused to sign the notice.  (#352-1 at p.5)

Further, Defendants also provide the written inmate discipline board findings and report

indicating that Plaintiff Maxwell did not request that any witnesses be called at the

hearing.  (#352-1 at p.6)  Plaintiff has not provided any evidence to the contrary.

Further, the failure to follow PCRDF policy fails to state a constitutional claim.

*Kennedy v. Blankenship*, *supra*.  Accordingly, Plaintiff has failed to present any genuine

---

[12]  To the extent that Plaintiff claims that Defendant Blalock issued Plaintiff a false
disciplinary, this claim fails as well.  The issuance of a false disciplinary, without more,
does not rise to the level of a constitutional violation.  See *Sprouse v. Babcock*, 870 F.2d
450, 452 (8th Cir. 1989)(citing *Freeman v. Rideout*, 808 F.2d 949, 951-52 (2nd Cir.
1986).

issue of material fact, and Defendants are entitled to judgment as a matter of law on this claim.

     5.     Retaliation Claim - Defendant Bailey

At the evidentiary hearing, Plaintiff Maxwell testified that Defendant Bailey retaliated against him by placing him in administrative segregation because he had filed a grievance against her.  Further, in response to the Defendants' motion for summary judgment, Plaintiff Maxwell specifically alleges that Defendant Bailey stated, "I am assigning [you] to administrative segregation because you filed a grievance against me." (#360 at p.24)

Defendants attach to their motion for summary judgment the Offense/Incident Report, dated June 1, 2006, indicating that Plaintiff Maxwell was placed on emergency administrative segregation "due to the lack of space in the T-Unit" and that disciplinary charges that were filed against him for assault on a PCRDF official.  (#352-1 at p.4-5) Defendants also provide the affidavit of Lesa Warner, who testified that inmates are placed on administrative segregation (as opposed to punitive segregation) for reasons unrelated to punishment.  (#352-1 at p.2)  Specifically, an inmate whose continued presence in the general population poses a threat to life, self, property, or the secure and orderly operation of the facility is placed on administrative segregation.  (#352-1 at p.2)

Here, Plaintiff Maxwell was charged with the assault of a PCRDF officer.  The Defendants contend that he was sent to administrative segregation, not as punishment, but

to promote the safety of the facility.  Plaintiff has not come forward with any evidence to the contrary.  Further, it appears that, although Defendant Bailey may have provided Plaintiff "notice of charge(s)" and was a member of the disciplinary hearing board who ultimately sentenced Plaintiff to ten days in punitive isolation (#352-1 at p.5-6), she was not the officer who initially placed Plaintiff in administrative segregation, nor was she the officer who issued the Offense/Incident Report.[13]

In addition, although Plaintiff, as a pretrial detainee, could not be placed in administrative segregation without notice and an opportunity to be heard, "no process is required if he is placed in segregation not as punishment but for managerial reasons." *Higgs*, 286 F.3d at 438.  Here, the Offense/Incident Report indicates that Plaintiff was placed in emergency administrative segregation due to "lack of space."  Accordingly, the Court cannot conclude that Plaintiff's placement in administrative segregation was punitive in nature.

To the extent that Plaintiff claims that Defendant Bailey retaliated against him by sentencing him to ten days in punitive isolation, his claim also falls short.  Here, the evidence indicates that Plaintiff was sentenced for an actual rule violation.  (#352-1 at p.6)  Although Defendant Bailey served as a member of the disciplinary hearing board, she did not serve as chairman of the board, nor did she issue the initial disciplinary to Plaintiff.  (#352-1 at p.6)

---

[13]  The Offense/Incident Report lists Sgt. Blalock as the reporting officer and Lt. Aldridge as the reviewing supervising officer.  (#352-1 at p.4)

Plaintiff initially complained that Defendant Bailey had retaliated against him in his appeal of his disciplinary conviction filed on June 13, 2006.  (#352-1 at p.8)  On appeal, the decision of the disciplinary board was affirmed by Shawn Smith, another impartial decision maker. (#352-1 at p.8)  Accordingly, although Plaintiff testified that Defendant Bailey specifically stated that he was being disciplined because he had filed a grievance against her, Defendants have presented "some evidence" that Plaintiff was disciplined for an actual rule violation.  See *Earnest v. Courtney*, 64 F.3d 365, 367 (8th Cir. 1995) (retaliation claim is precluded if punishment is imposed for actual rule violation and defendants show "some evidence" that inmate committed the alleged rule violation) and *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (stating that "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker")  Plaintiff has failed to rebut this evidence.  He, therefore, has failed to create a material dispute of fact on this issue and this claim should be dismissed.

      6.    Retaliation Claim - Defendant Wright

Plaintiff Maxwell testified that on May 29, 2007, Defendant Wright issued Plaintiff a false disciplinary in retaliation for his filing a grievance against Defendant Wright on May 20, 2007.  Plaintiff is correct that "[a]n inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files

disciplinary charges in retaliation for an inmate's exercise of constitutional rights."
*Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008).  An inmate alleging that an
individual has retaliated against him must prove that retaliation is the actual motivating
factor for adverse action.  *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996).  Mere
speculative or conclusory allegations are insufficient to establish a retaliation claim.
*Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam).

Here, Plaintiff Maxwell has failed to present any evidence that retaliation was a
motivating factor for Defendant Wright's conduct.  He offers only his conclusory
allegations to support this claim.  In contrast, Defendants have presented the disciplinary
hearing action papers showing that Plaintiff was found guilty of the violation at issue.
(#352-1 at p.28)  See *Earnest v. Courtney*, *supra*, and *Hartsfield v. Nichols*, *supra*.
Accordingly, this claim fails as a matter of law.[14]

7.       Excessive Force Claim - August 4, 2006 (prior to transport to courthouse)

At the evidentiary hearing, Plaintiff identified seven individuals who were
allegedly involved in an incident that took place on August 4, 2006, when Plaintiff was
awaiting transport to the Pulaski County Courthouse.  They are: Gerald Kirk (dismissed

---

[14]   In his response to the motion for summary judgment, Plaintiff Maxwell states
that Defendant Talley did not allow him to call Deputy Allen as a witness during the
disciplinary hearing, in violation of his due process rights.  Defendants, however, attach
to their motion for summary judgment, a statement signed by Deputy Allen in which he
indicated that he "did not wish to be a witness or make a statement" with regard to the
May 29, 2007 incident.  (#352-1 at p.23)   Plaintiff has failed to present any evidence in
rebuttal and, therefore, has failed to create a genuine issue of material fact with regard to
this claim.

as a party Defendant on May 6, 2008) (#243), Rochron Thompson, Richard McAnally, Vance Rice, James Fencer, Gilbert Lewis, and Carolyn Redmon.  Plaintiff testified that while he was awaiting transport, these deputies became aggressive.  Plaintiff explained that during the incident Defendant Redmond sprayed him with pepper spray.  Plaintiff was then taken to the female restroom where he alleges that Deputy Kirk banged Plaintiff's head into the sink and choked him until Defendant McAnally instructed Deputy Kirk to stop.

In their motion for summary judgment, Defendants argue that the main alleged assailant in the incident in question was Deputy Kirk, who has been dismissed as a party Defendant.  In addition, they contend that Plaintiff's excessive force claim should be dismissed because: (1) Defendant Redmon's use of pepper spray was reasonable given the circumstances; (2) an officer did timely intervene to control the situation, and (3) Plaintiff failed to sustain any injury as a result of the above-described incident.

Based upon the evidence presented, it appears that Deputy Kirk was the main person involved in the altercation on the morning of August 4, 2006, and that he has now been dismissed as a party Defendant.  The Court, however, does not believe that Deputy Kirk's dismissal forecloses this issue.

"To prove an Eighth Amendment violation, a prisoner must satisfy two requirements, one objective and one subjective.  The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second

requirement is subjective and requires that the inmate prove that the prison officials had a sufficiently culpable state of mind."[15]  *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (internal citations and quotations omitted).  "It is . . . clearly established that force may be justified to make an inmate comply with a lawful prison regulation or order, but only if the inmate's noncompliance also poses a threat to other persons or to prison security."  *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (citing *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002); *Jones v. Shields*, 207 F.3d 491, 496-497 (8th Cir. 2000); *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993); *Stenzel v. Ellis*, 916 F.2d 423, 426-427 (8th Cir. 1990)).

Officers do not violate the Eighth Amendment, however, when they use force reasonably "in a good-faith effort to maintain or restore discipline."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Factors for consideration in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.  *Hudson*, 503 U.S. at 7.

---

[15]  The Court notes that because Plaintiff Maxwell was a pre-trial detainee at the time of this incident, his claim is analyzed under the fourteenth amendment due process clause.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  The same standard, however, applies for both pre-trial detainees and convicted inmates for claims based upon excessive force under the Eighth Amendment.  See *Perkins v. Grimes*, 161 F.3d 117, 1130 (8th Cir. 1998).

At the evidentiary hearing, Defendant Gilbert testified that on the morning of August 4, 2006, Defendant Redmon told Plaintiff Maxwell that he and Plaintiff Smith could not be transported together to the Pulaski County Courthouse.  When Plaintiff Maxwell received this news, he began refusing Defendant Redmon's orders.  Defendant Redmon then instructed the other officers to take Plaintiff Maxwell to the van.  Maxwell became combative, pushing Deputy Kirk.  The other deputies then stepped in, and Plaintiff was taken to the ground and pepper sprayed.

Plaintiff's version of the facts differs greatly from Defendant Gilbert's.  At the hearing, Plaintiff Maxwell originally testified that when he was being placed in the holding cell to be transported to the Pulaski County Courthouse, Deputy Kirk began making obscene remarks to him.  He testified that all of the deputies then became aggressive, picking him up and kicking him.  Deputy Redmon then sprayed Plaintiff with pepper spray while Plaintiff was handcuffed, according to Plaintiff Maxwell's testimony.

During Defendants' cross-examination of Plaintiff, however, Plaintiff Maxwell admitted that on the morning of August 4, 2006, he refused to go to the Courthouse because he could not ride with Plaintiff Smith.  Further, Plaintiff Maxwell specifically testified that he refused Defendant Redmon's direct order to get into the van for transport to the Courthouse.

It is undisputed, therefore, that the incident in question began when Plaintiff refused Defendant Redmon's direct order to get into the van.  In addition, Plaintiff

originally alleged that the officers involved in this incident began the altercation by becoming aggressive with him and physically assaulting him.  Based upon Plaintiff's testimony at the hearing, however, it appears that Plaintiff actually was the instigator of the situation.  Accordingly, the Court must now determine, based upon the evidence presented, whether the force used exceeded the degree to which a reasonable officer would have believed necessary to further some legitimate institutional interest such as safety, security, or efficiency.  *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

In *Jones v. Shields*, *supra*, the Eighth Circuit Court of Appeals specifically held that the administration of capstun (pepper spray) in a prison setting after an inmate refused direct orders by an officer failed to establish an eighth amendment violation.  The Court ruled that the type of force used was not "repugnant to the conscience of mankind" and, relying upon a case from the Seventh Circuit Court of Appeals, stated that "the use of mace, tear gas, or other similar agents does not constitute cruel and unusual punishment when reasonably necessary to subdue a 'recalcitrant prisoner,' even where the prisoner is locked in his cell or in handcuffs."  *Id.* at 496 (citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (8th Cir. 1984)).  The Court specifically held that the inmate plaintiff in *Jones* had failed to establish that the officer's conduct was "malicious or sadistic."  *Jones*, 207 F.3d at 497.

23

Here, as in *Jones*, Plaintiff Maxwell admittedly refused Defendant Redmon's direct order.[16]  Although Plaintiff originally claimed that the officers were the initial aggressors in the situation, the evidence presented at the hearing does not support Plaintiff's contention.  As noted, the incident began due to Plaintiff Maxwell's conduct, not because of aggression by any of the Defendants.  Further, following Plaintiff's refusal to follow Defendant Redmon's order, Plaintiff pushed Deputy Kirk.  Plaintiff did not dispute this fact during the hearing or in his response to the Defendants' motion for summary judgment.[17]  Accordingly, the facts at issue in this case are even more compelling than those in *Jones*.  Here, Plaintiff actually acted in a threatening manner towards an officer.  Accordingly, even assuming that Plaintiff was handcuffed during this incident, the force used was reasonable given the situation.

Further, Plaintiff can hardly claim that Defendant Redmon acted "maliciously or sadistically" in administering the pepper spray.  Again, not only had Plaintiff directly disobeyed Defendant Redmon, but also engaged in threatening behavior towards another deputy.  Plaintiff has failed to present any evidence to allow the Court to infer that

---

[16]  In his response to the motion for summary judgment, Plaintiff does not admit that he refused any direct order, but claims that he was inquiring about Plaintiff Smith's health.  (#360 at p.15-16)

[17]  The Court notes that in his response to the Defendants' motion for summary judgment, Plaintiff states that after he was taken to the ground and pepper sprayed, he was "unable to resist or physically struggle."  (#360 at p.16)

Defendant Redmon acted in a malicious manner.  Accordingly, Plaintiff has failed to create a material dispute of fact on this issue and this claim fails.

In their motion for summary judgment, Defendants also argue that Plaintiff's claim against Defendant Redmon fails because Plaintiff has not provided any evidence that he sustained any injury as a result of the incident in question.  The Court agrees.

Although the Eighth Circuit Court of Appeals has specifically held that the use of pepper spray without cause is greater than de minimis, *Foulk v. Charrier*, 262 F.3d 687, 692, 700-701 (8th Cir. 2001), here, Defendant Redmon administered pepper spray in an attempt to resolve a situation involving a noncompliant and threatening inmate.  This is not a situation, as in *Foulk*, where an officer enticed a compliant inmate to place his face against a screen window so that he could douse the inmate with pepper spray.

Because Plaintiff has failed to provide any evidence that he sustained any injury as a result of this incident, he cannot establish any damages, including nominal damages, to sustain this claim.[18]

---

[18]  The Eighth Circuit Court of Appeals has stated that the PLRA's "physical injury requirement" was not intended to bar recovery for all forms of relief, and absent physical injury, a plaintiff may recover nominal and punitive damages, *Royal v. Kautzy*, 375 F.3d 720, 723 (8th Cir. 2004).  In addressing an eighth amendment claim, however, the Court should consider the injury sustained by the Plaintiff in determining whether excessive force was used.  See *Foulk*, 262 F.3d at 701 ("An injury warranting nominal damages is not necessarily the result of a de minimis use of force.  Stated differently, it is possible for a use of force to be excessive and in violation of the Eighth Amendment, and yet result in injury having no or only nominal monetary value."); *Howard v. Barnett*, 21 F.3d 868, 873 (8th Cir.1994)("force that is excessive within the meaning of the Eighth Amendment is compensable if it causes the prisoner actual injury, even if the injury is not of great significance.").

According to Plaintiff, when he was escorted into the bathroom to be decontaminated after the pepper spray incident, Deputy Kirk began choking him and banging his head into the sink.  In his response to the motion for summary judgment, Plaintiff Maxwell claims that this incident lasted for nearly six minutes until Defendant McAnally instructed Deputy Kirk to stop.  (#360 at p.16)  Plaintiff identifies the individuals present during the incident in the bathroom as Deputy Kirk, Defendant McAnally, and Defendant Rice.  (#360 at p.16)

Plaintiff is correct that an officer does have a duty to intervene and prevent the obvious and ongoing use of excessive force by another individual.  *Krout v. Goemmer*, 583 F.3d 557, 565-66 (8th Cir. 2009).  However, in this incident, Plaintiff has failed to present evidence that he sustained any injury as a result of the incident.  If Deputy Kirk had been permitted to engage in such conduct for six minutes, Plaintiff would have sustained some sort of injury.  "Claims under the Eighth Amendment require a compensable injury to be greater than de minimis."  *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

In addition, Plaintiff testified during the evidentiary hearing that he did not fill out an "altercation form" regarding this incident; Deputy Gilbert testified that Plaintiff did not complain of any such conduct immediately after Plaintiff claims that the incident occurred.  Because Plaintiff has failed to present any proof that such incident actually

occurred, or that he sustained an actual injury, even one having only nominal monetary value as a result of the incident, his claim fails.

8.      Excessive Force Claim - August 4, 2006 (after return to PCRDF)

Plaintiff also claims that when he returned from the Pulaski County Courthouse on August 4, 2006, he was involved in another altercation involving Deputy Kirk.  Plaintiff testified that after Deputy Kirk and Defendant Rice escorted him to his cell and removed his restraints, he raised his arm with a clinched fist and "accidentally" struck Deputy Kirk in the back of the head.  Plaintiff Maxwell testified that Defendant Rice and Deputy Kirk then assaulted him, striking him with a metal blunt object and banging his head against the ground.  Plaintiff explained that Defendant Jones witnessed the incident, but did nothing to help.  Plaintiff received stitches for the injuries that he sustained during the incident.

At the evidentiary hearing, Defendant Jones testified that she was the officer who arrived at the T-Unit, saw blood on the floor, witnessed Plaintiff Maxwell strike Deputy Kirk, and immediately called a "code blue" for officer assistance.  Deputy Jones testified that she did not witness anyone hit Plaintiff and that when she arrived, she placed handcuffs on Plaintiff.  Plaintiff has not presented any evidence to the contrary.  Although an officer has a duty to intervene and prevent the obvious and ongoing use of excessive force by another individual, based upon the evidence presented, when Defendant Jones arrived, she acted reasonably given the circumstances.

27

Plaintiff's testimony lacks credibility.  At the evidentiary hearing, he testified that Defendant Rice held Plaintiff while Deputy Kirk hit him in the head.  In his response to the Defendants' motion for summary judgment, however, Plaintiff states that Defendant Rice did not actually assault him, but failed to stop Deputy Kirk from continuing in his assault of Plaintiff.  (#360 at p.19)

At this stage in the proceedings, Plaintiff has presented two different versions of the events giving rise to this incident involving Deputy Kirk.  Plaintiff has, in fact, minimized Defendant Rice's role in the incident and, other than asserting that Defendant Rice failed to protect him during this incident in his response to the Defendants' motion for summary judgment, has failed to present any evidence that Defendant Rice acted unreasonably.  Plaintiff has failed to state what Defendant Rice witnessed, how Defendant Rice should have intervened, or what he should have done to stop Deputy Kirk.  In contrast, Defendants presented Defendant Jones's testimony at the evidentiary hearing in which she testified that Defendant Rice grabbed Plaintiff Maxwell afer he struck Deputy Kirk, and that she and Defendant Rice then restrained Plaintiff Maxwell.

The Court concludes that Plaintiff has not presented sufficient evidence to defeat Defendants' motion.  Plaintiff's conclusory unsupported allegation is insufficient. Accordingly, Plaintiff's claim fails.[19]

---

[19] In his response to the Defendants' motion, Plaintiff Maxwell claims that Defendant Redmon and Johnson should be liable for this incident for their failure to train the PCRDF staff.  In order to prevail on his failure to train claim, Plaintiff must show: (a) the PCRDF's training practices were inadequate; (b) the failure to train was a result of a

9.      First Amendment Claim

Plaintiff Maxwell claims that he failed to receive mail while he was housed at the

PCRDF.[20]  In addition, he claims that the manner in which mail is distributed at the

PCRDF is unconstitutional.  Defendants contend that Plaintiff's claim fails as a matter of

law.  The Court agrees.

At the hearing, Kim Harrison, mail clerk at the PCRDF testified that the mail is

sorted when it arrives at the PCRDF.  Legal mail is taken to the individual units, and

personal mail is first searched, then placed into bins for the deputies to distribute to the

inmates.  Ms. Harrison testified that mail is delivered within twenty-four hours of when it

is received.

Although Plaintiff claims that he failed to receive certain mail while he was

housed at the PCRDF, he has not come forward with any evidence to support such a

claim.  Plaintiff's unsubstantiated beliefs without more are insufficient to defeat a motion

---

deliberate and conscious choice by Defendants Redmon and Johnson; and (c) the training
deficiency actually caused Plaintiff's injury. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th
Cir.1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197 (1989)).
Here, Plaintiff has failed to present any evidence to support such a claim.

[20]  To the extent that Plaintiff claims that any restrictions on his mail violated his
freedom of religion to correspond with his "religious faith marriage" wife, Plaintiff
Smith, this claim also fails.  Again, Plaintiff has failed to provide any actual evidence to
support this claim.

for summary judgment.  Because Plaintiff Maxwell has failed to create a genuine issue of material fact on this issue, Defendants are entitled to summary judgment.[21]

      10.    Failure to Protect Claim

Finally, Plaintiff argues that Defendants Mance and Comic failed to protect him from an altercation involving inmate Snow that took place in November 2006.  At the hearing, however, Plaintiff testified that he initiated the altercation with inmate Snow.  Further, the Offense/Incident Report attached to Defendants' motion for summary judgment and completed by Defendant Mance, plainly describes the incident as one that began when Plaintiff Maxwell hit inmate Snow with a broom.  (#352-1 at p.9)  Accordingly, the Court cannot discern how Defendants Mance and Comic can be found liable for the alleged injuries that Plaintiff received as a result of the surprise attack that he initiated.  This claim fails as a matter of law.

---

[21]  Ms. Harrison testified at the hearing that certain pieces of Plaintiff Maxwell's mail were confiscated when it was discovered that he was attempting to "wash" stamps for re-use and was attempting to circumvent the mail system by failing to place postage on his mail, then using the intended receiver's address for the return address.  In his response to the Defendants' motion, Plaintiff disputes these facts.  However, because Plaintiff has failed to provide any evidence to support his first amendment claim, this disputed fact is not material.  Further, Plaintiff has not presented any evidence that he did not receive notice that specific correspondence was "rejected." *Bonner v. Outlaw*, 552 F.3d 673, 677 (8th Cir. 2009) (citing *Procunier v. Martinez*, 416 U.S.396, 417, 94 S.Ct. 1800 (1974)) (explaining that whenever prison officials restrict an inmate's first amendment right to receive mail, "they must provide minimum procedural safeguards, which include notice to an inmate that the correspondence was rejected").  Accordingly, Plaintiff's claim fails.

IV.    **Conclusion:**

The Court recommends that the Defendants' motion (#350) be GRANTED.  All claims should be dismissed with prejudice.  In addition, Plaintiff Maxwell's motion for ruling (#376) should be DENIED as moot.

DATED this 12th day of July, 2010.

_____
UNITED STATES MAGISTRATE JUDGE